IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**SHERRY DENISE MOORE**                                **PLAINTIFF**

v.                                **CIVIL ACTION NO. 3:20-cv-303-JMV**

**COMMISSIONER OF
SOCIAL SECURITY**                                  **DEFENDANT**

## ORDER

This matter is before the court on Plaintiff's complaint [1] for judicial review of the Commissioner of the Social Security Administration's denial of an application for supplemental security income and disability insurance benefits. The undersigned held a hearing on February 17, 2022 [23]. Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and that said decision should be affirmed.

### Standard of Review

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Statement of the Case**

The Plaintiff was born on October 18, 1973, and has been a younger individual at all relevant times. The ALJ found that the Plaintiff is unable to perform any past relevant work. (Tr. 23). The Plaintiff's past relevant work includes that of a product assembler, compression molding machine tender, and a machine long goods helper. (Tr. 23). The ALJ found Plaintiff to have the following severe impairments: diabetes mellitus, charcot foot disorder, and hypertension. (Tr. 19).

On March 21, 2019, Ms. Moore protectively filed her application for SSI, alleging her disability commenced on July 22, 2016. The Commissioner denied Plaintiff's applications initially and on reconsideration (Tr. 66-99). Pursuant to Plaintiff's request, an ALJ held a hearing on May 20, 2020. Plaintiff, her attorney, and Brenda Dumas, an impartial vocational expert, appeared at the hearing. The ALJ issued a hearing decision on June 3, 2020, finding Plaintiff not disabled (Tr.

24).

The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 22, 2016 (Tr. 19). At step two, Plaintiff's diabetes mellitus, Charcot foot disorder, and hypertension were "severe" impairments (Tr. 19). At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled the criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings) (Tr. 19).

The ALJ then assessed Plaintiff's RFC, finding that Plaintiff retained the ability to perform sedentary work, except she could occasionally climb and balance occasionally, and stoop, kneel, crouch, and crawl frequently (Tr. 20). At step four, the ALJ found that this RFC did not allow for the performance of Plaintiff's past relevant work, which a vocational expert classified as light to medium as generally and actually performed (Tr. 23, 59-60). At step five, with the VE's assistance, the ALJ found that Plaintiff could make a successful adjustment to other work existing in significant numbers in the national economy, such as information clerk, food and beverage order clerk, and final assembler (Tr. 24, 61). Accordingly, the ALJ found Plaintiff not disabled and denied her applications (Tr. 24-25).

On September 14, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's June 3, 2020, decision the Commissioner's final decision for purposes of judicial review under the Social Security Act (Tr. 6-10). See 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 416.1481.

## Discussion

The Plaintiff raises two issues, which will be addressed in turn below.

**A) Did the ALJ err by assessing an RFC to Plaintiff that is not supported by substantial evidence?**

The Plaintiff argues that the ALJ's decisions is not supported by substantial evidence

because of the "conspicuous absence of credible choices" supporting the RFC. *See* Pl.'s Br. [18] at 4. Plaintiff further argues that "given the evidence of record, Plaintiff's testimony, and the testimony of the VE, prejudice is established by the ALJ's failure to adequately account for Plaintiff's limitations with her ability to stand/walk and/or the need for her to elevate her feet." *Id.* at 6.

However, this Court is unpersuaded by Plaintiff's argument that the RFC is unsupported. As the Commissioner pointed out in her brief, the medical evidence reveals that Plaintiff was instructed to temporarily avoid bearing weight on her right foot in July, September, and October 2016 (Tr. 384, 533). By September 2016, Plaintiff was prescribed a CROW, in which she was able to ambulate (Tr. 533). Subsequent examinations showed that Plaintiff continued to wear the CROW without complication and was instructed to transition to a regular shoe as tolerated as early as March 2018 (Tr. 518, 522, 524, 526-27, 532-34). Primary care treatment notes indicate a normal gait and station in May, August, September, and October 2017 (Tr. 304-05, 306, 309, 312). No gait issues were noted at primary care examinations in April, November, and December 2018, and February and July 2019 (Tr. 286-87, 289-90, 293, 299, 536). Thus, Plaintiff's assertion that she could not bear weight prior to April 2018 does not comport with her medical records. *See* Pl.'s Br. at 4. Because Plaintiff's Charcot disorder caused difficulties bearing weight for only a few months, the impairment was not of sufficient severity for a finding of disability. *See* 42 U.S.C. § 423(d)(1)(A) (twelve-month duration requirement for disabling impairments).

Plaintiff also argues that she cannot bear weight on her left foot because of a March 2017 toe amputation. *See* Pl.'s Br. at 5. However, the medical evidence does not indicate that Plaintiff had any issue bearing weight on her left foot, despite the amputation. Plaintiff alleged at the administrative hearing that the toe amputation caused problems balancing (Tr. 47), and the ALJ

included in the RFC a restriction to occasional balancing (Tr. 20). *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (subjective complaints must be corroborated by objective medical findings to carry weight). Given this accommodation, Plaintiff has failed to show additional limitations caused by her left toe amputation not already included in the RFC.

Finally, Plaintiff's argument that the RFC should have accounted for a need to elevate her feet has no merit. *See* Pl.'s Br. at 5-6. In support of this claim, Plaintiff points only to her subjective hearing testimony that she has to either lie down or elevate her feet for 40 minutes to an hour at least three or four times a day (Tr. 50-51). *See* Pl.'s Br. at 5. Again, Plaintiff has not pointed to any evidence that supports her claim. *See Harrell*, 862 F.2d at 481. Plaintiff has not pointed to any statement from an examining or reviewing medical professional indicating that she would need to elevate her feet or was otherwise functionally limited to a disabling degree. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (ALJ's determination of non-disability is supported when no physician of record opines that the claimant is disabled).

The Fifth Circuit has affirmed that the ALJ has the sole responsibility to determine the RFC and has held that "the ALJ properly interpret[s] the medical evidence to determine [a claimant's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). Furthermore, the RFC is the most a claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). The RFC assessment is based on "all of the relevant medical and other evidence" (20 C.F.R. § 416.945(a)(3)), including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 SSR LEXIS 5, at *13-14. The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence. *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007),

citing *Holman v. Massanari,* 275 F.3d 43 (5th Cir. 2001).

Here, this Court finds that substantial evidence supports the ALJ's RFC assessment. Plaintiff has not shown that her impairments cause functional limitations beyond those included in the restrictive range of sedentary work the ALJ found she could perform.

**B)        Did the ALJ err in her analysis of Plaintiff's listed impairments?**

The Plaintiff also argues that the ALJ failed in her analysis because she failed to address whether the Plaintiff's limitations met the Listed Impairment for fracture of the femur, tibia, pelvis, or one or more of the tarsal bones, which is listing 1.06 under the adult listings. *See* Pl.'s Br. [18] at 7. According to the Plaintiff, the ALJ used cursory boilerplate language in her failure to complete a proper Step 3 analysis. *Id*. at 9.

The listings in Appendix 1 operate as a presumption of disability because they define impairments so significant that they would prevent a person, regardless of her age, education, or work experience, from performing any substantial gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). To establish that she has an impairment that meets a listing, a claimant must prove that her impairment satisfies all of the specified medical criteria associated with that particular listing. *Id.* at 530; 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3).

The Plaintiff's point of error relates to Listing 1.06. Listing 1.06 states:

1.06 Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. With:
    A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid; and
    B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, § 1.06. An "inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk," or "having insufficient lower extremity functioning . . . to permit

independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id. § 1.00(B)(2)(b)(1).

> Examples of an inability to ambulate effectively include:
>
> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

Id. § 1.00(B)(2)(b)(2). Plaintiff has not shown that she has an inability to ambulate effectively. Rather, the Plaintiff's medical records show that after being diagnosed with Charcot disorder, she was instructed to avoid bearing weight on the right foot for only a few months in 2016, after which she was ambulating with a specialized boot and eventually advised to transition to regular shoes (Tr. 21, 368-84, 518-34).

A review of Plaintiff's medical records supports this finding. In July 2016, Plaintiff complained of right foot pain and swelling, and an x-ray suggested Charcot foot disorder (Tr. 21, 368, 371-72, 378). Dr. Luber immobilized Plaintiff's right foot and ankle with a boot and instructed her to use a walker for "protected weightbearing" (Tr. 384). Then, providers at North Mississippi Foot Specialists, P.C. (NMFS), treated Plaintiff multiple times in September and October of 2016 (Tr. 533). These providers instructed Plaintiff to use a knee scooter or otherwise avoid putting pressure on her right foot in September and October 2016. Beginning in December 2016, however, NFMS providers indicated that she was able to ambulate using a specialized boot, referred to as a CROW, and revert to regular follow up care every three months beginning in December 2016 (Tr. 533).

At subsequent visits to NMFS in June and November 2017, Plaintiff continued to wear her CROW without complication and examination was normal (Tr. 526-27, 532-34). In March and

April 2018, Plaintiff's Charcot was noted as stable and she was instructed to transition into a regular shoe as tolerated (Tr. 518, 522, 524).

At routine primary care visits in May, August, September, and October 2017, Nurse Practitioner Tubbs recorded a normal gait and noted that Plaintiff was "ambulating normally" with her CROW and had normal muscle strength and tone throughout (Tr. 304-05, 306, 309, 312). In April 2018, Nurse Practitioner Smith noted some mild right foot edema and decreased strength, but noted no gait abnormality and instructed Plaintiff to get diabetic shoes (Tr. 286-87). Subsequent examinations in November 2018, December 2018, February 2019, and July 2019, failed to show any gait issues despite notations that Plaintiff was wearing her CROW again at the 2019 visits (Tr. 289-90, 293, 299, 536).

This Court finds that Plaintiff has not met her burden to show that she met Listing 1.06, and absent such a showing of prejudice, the ALJ's decision must be affirmed. *See Audler v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007) (remand is not required unless the claimant establishes that an omission of articulation at step three represented harmful error, i.e., affected the claimant's substantial rights). The listings' criteria are "demanding and stringent," and here, Plaintiff has not met those criteria by showing an inability to ambulate effectively. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Because Plaintiff has not met her burden of presenting medical evidence showing she met or equaled a listed impairment, this Court declines to find error in the ALJ's step three determination.

**Conclusion**

For the reasons stated above, the undersigned finds that the Commissioner's decision should be and is hereby affirmed.

**SO ORDERED** this, the 23rd day of February, 2022.

/s/ Jane M. Virden
U.S. Magistrate Judge

Case: 3:20-cv-00303-JMV Doc #: 25 Filed: 02/23/22 9 of 9 PageID #: 629